Good afternoon, your honors. May it please the court. My name is Todd Larris. I represent Appellant Saber Shehadeh. From the briefing, this court is aware that the primary contention that the appellant, pardon me, I'm jumping ahead. Mr. Hales has to introduce himself as well. No, he doesn't. He doesn't have to at this point. Okay, thank you. Larris, you can proceed. Thank you. I'd like, with the court's permission, to reserve two minutes of time for rebuttal. But the primary, thank you, the primary contention in the appeal, as the court knows from the briefing, is that the court, sua sponte, cut off cross-examination of a critical witness, a man named Jim Wolf, who was a principal in a construction company, Wolf Construction, that submitted the invoices, the inflated invoices that were the basis for the three counts of mail fraud in this case. Now, the government has characterized the case as being much broader than that. But essentially, the three instances where the government had evidence to establish that some money had been paid by State Farm Insurance over and above what would have been a legitimate claim in the aftermath of the fires, the only claim that the government had proof of that some excess money was paid was with these invoices for cleanup after the second fire. And so they were... This was cross-examination with prior statements. The government says that even the prior inconsistent statement rule doesn't apply because they weren't his prior statements. But putting that aside. Judge Brisson, I can't hear you very well. Oh, I'm sorry. Is that better? You know, I have a new microphone, but I haven't figured out how to use it yet, so it's not on. Is that better? A little, yeah, a little better. I'll try it for tomorrow. So, the cross-examination, and the statements that were being read to him were not coming in for their truth, substantively, right? The statements that were being read to him were being read as a foundation. They were his statements, Your Honor. They were statements that Jim Wolfe had made to the investigators. I understand, but it was cross-examination just to test his statement that he didn't... What he said to this person, he didn't remember. He kept saying, well, I don't understand what continuing to do this would accomplish, because the statements themselves were not substantive evidence. They were only evidence that he had a conversation and he didn't remember what happened. And that was established. So, what's the point of keeping going? In order... I should indicate that I was trial counsel, and so was Mr. Hales, but in order for a foundation to be established for the statements to be admitted as extrinsic evidence, to show that they were false, and that different statements had been made, he had to be confronted under Federal Rule of Evidence 613B with the statements, and to be provided with an opportunity to either confirm those statements or deny them. He said... Which statements were false? His earlier testimony as to what happened? His statements, not testimony, but his statements outside of court, through Mr. Johnson during the course of the investigation. He had to be provided with an opportunity as a foundational matter to either confirm those statements or deny them. I thought you wanted it to be true, not false. In terms of the statements that he made on the earlier occasion, yes, I wanted to be able to argue to the jury that his previous statements were truthful statements. But I was... Okay, but those statements can't come in for their truth. Pardon? Unless they're a growth, right? I'm sorry, Your Honor, I can't hear you. Those statements cannot come in for their truth, is that correct? The statements could come in for the truth as extrinsic evidence after the foundation had been laid under Federal Rule of Evidence 613B, yes. It says expressly that they can come in as extrinsic evidence. They could also be used to evaluate the credibility of that witness, and this witness was a key witness for the government. What evidence in the record is there, Mr. Larris, that these statements were adopted by the witness, by Mr. Wolf, or that they were verbatim? They don't purport to be verbatim statements. Your Honor, the statements were made during the course of the interview. You are correct that he was not provided with an opportunity to review them, but the Federal Rules of Evidence don't require that. They simply require that he be confronted with them. He could explain- He could be impeached with his own prior statements. My question is, these aren't his own prior statements. These are a third party witness's recollection of what he said. If it was his own statement, if he adopted it, yes, then you can cross and impeach with that, but he never adopted those statements. He says he couldn't remember. Well, if the defense had been allowed to fully cross-examine as to the content of the statements, he was given an opportunity to explain why he said those things. That's the crucial thing that the court cut off sua sponte, was deprive the defense of the ability to develop on cross-examination its theory of the defense and to present that evidence. Later, the government argues in the court sua sponte sustained its own objection to the foundation, we could not have done that. First, as a practical matter, the court essentially said, I'm going to cut this off right here, and it's not going to go further. So, as a practical matter, the court would not have allowed those statements to come in as extensively. Well, the court cut it off because he kept saying, I can't remember. That's not necessarily true with Mr. Johnson. Just because the cross-examination after repetitive, I don't remember of one witness doesn't mean that the other witness who does remember couldn't be asked to testify. In fact, that would be the more appropriate way to get in 613 evidence, seems to me. When the court canceled the question, was Mr. Johnson a witness at the trial? Yes, he was a witness at the trial. He was a crucial witness in terms of establishing that documents that the government alleged were false and were submitted by Mr. Shahada to the insurance company. He was the one who came in and said, those are false documents. Part of what the defense was trying to develop is that he was instrumental and participated in creating them as false documents in order to dupe the defendant, in order to use the defendant as a conduit to pass false information unwittingly to State Farm. And that was what was prevented from being presented at trial by what the court did. Now, the point being that the court, in sustaining an objection when you're asking the foundational question required to even get the statement, and when the court did that, it effectively then made the statements pure hearsay because no foundation had been allowed to allow the witness, Mr. Johnson, Scott Johnson, to come in and testify as to the substantive statements. What Mr. Wolfe told him during the interview that caused Mr. Johnson to then approve the claim and what statements Mr. Wolfe told Mr. Johnson about the origins of the company and the participants of the company to show that Saber Shahada was not actually a member of that at the time, that he did not know that that company was a false company and had not performed the work that Mr. Wolfe was representing it had done. I see at this point, you wanted to reserve two minutes. Thank you. Yes, thank you. Mr. Hales. Good afternoon, your honors. May it please the court. I'm Christopher Hales for the United States. I was one of the trial counsel for the government in this case. I'd like to start with Judge Brezon with your question about whether these, whether the information Mr. Laris was it could not under federal rule of evidence 801 D1A. And that is because the statements, to the extent they were given to Scott Johnson, were not done under penalty of perjury during a trial hearing or a deposition as listed in their rule. So to the extent that rule 613, as I understand it, says it's admissible only if he's given an opportunity to explain, but it doesn't say it is admissible if he is given an opportunity to explain. In other words, there are other conditions as to when it's admissible. Is that right? Is that what you're saying? I've got 801. As a statement of a party, or it might be admissible under 801, or it might be admissible for various reasons, but 613 doesn't make it admissible. It just makes it not inadmissible. That's correct, Your Honor. If it was an inconsistent statement that, in fact, the witness had made, and that was established, then an extrinsic evidence could, in the discretion of the court, be permitted to then impeach the witness. But as Judge Chen was asking a few moments ago, whether there was any evidence in the record that Mr. Wolfe had ever adopted this information and supplemental excerpts of 1290, no, there isn't. The log reflected that Mr. Johnson had written that non-verbatim summary. This activity log had been used to refresh that State Farm employee, Mr. Johnson, during the trial, but there was nothing to indicate Mr. Wolfe had adopted that document. And in fact, he said after he reviewed it on the stand that it did not refresh his record. To the point, yes, on the question you asked, Judge Wardlaw, yes, Scott Johnson was a witness in the trial. He testified before Mr. Wolfe, and I disagree with the contention that he could not have been called back to talk about these prior statements because Mr. Wolfe had been questioned about it. He'd given a chance to say whether he remembered it or not, whether he had those statements. And so I think under Rule 613, it would have been difficult after the length of discussion that the defense went into with Mr. Wolfe about this conversation to say he hadn't been confronted at least with some of these statements and said he couldn't remember making them. And at that point, Scott Johnson could have been called back to testify about whether Mr. Wolfe had made some of those statements, and that could have been used to impeach Mr. Wolfe. And I would submit perhaps one of the reasons why that didn't happen is that some of the things that the defense was saying that they wanted to get in with Mr. Wolfe here had in fact already come in with Mr. Johnson. He had testified on direct. He'd been told that a subcontractor had done this work by Mr. Wolfe. And then on cross-examination, the defense questions Mr. Johnson, and he said Mr. Wolfe told him that work had been done, that he had a crew out there, and that those statements ended up helping Mr. Johnson resolve his questions about this part of the claim. And so that that feeds into the government's harmless error argument as well here, which is a substantial amount of the information the defense is saying they wanted to get out of Mr. Wolfe with a document Mr. Johnson had created. Some of that was already in the record, and the jury convicted anyway. And taking into account that and all of the other evidence summarized in the government's brief here, that's entirely independent of Mr. Wolfe, we submit there was no error in cutting off this questioning here. But even if there had been, we submit the government's evidence of guilt from Mr. Shahidi was overwhelming, and that it would be harmless error even if there had been one. I'm happy to answer any other questions the court may have. Could the, Mr. Daniels, could the claim log itself have been admitted either under 613 or as an exception, like a business record exception to hearsay? I don't, I don't think it's a business record exception. I think the most technically correct, I don't think so, Your Honor, because it was non-verbatim. I think the most technically correct way for that to be done is for Mr. Johnson to be on the stand to say what statements Mr. Wolfe said to him, and if he can't recall, he can be refreshed with that non-verbatim narrative he'd written to memorialize this conversation with Mr. Wolfe. But if those statements come in that way, they'd still be hearsay, right? Yes, Your Honor, but they would be statements. They would be usable for a cross-examination or for impeachment. They, under 613 for it. But they still wouldn't be substantive evidence, right? That is correct. That is correct, Your Honor. Okay. All right. Thank you, Mr. Hales. Mr. Larris, you have two minutes. Thank you. Thank you, Your Honor. I wanted to address, first of all, the issue regarding the information that was obtained from Scott Johnson, who did testify. That was, a lot of that information came in for government hearsay purpose to explain what he did or did not do as a representative of Farm in response to information provided by Mr. Wolfe. That's non-hearsay. It explains what the witness did. The government has characterized that as smuggling in information or getting information in that otherwise would not have come in. But it came in for a perfectly reasonable and permissible purpose, which was to explain that Mr. Johnson, based on this conversation with Mr. Wolfe, approved the questioned invoices. The second aspect that has been asked about, Mr. Hales, is whether this comes in as substantive defense evidence. But the point is that the jury's function as a fact finder was essentially displaced by the court in intervening in the way it did. These come in as prior inconsistent statements, which reflect on the credibility of the witness who testified. And this was the one witness who established the falsity of the invoices that were the mailings. So this was crucial. And that's why, as I've indicated in the briefs, this was information that essentially deprived the defendant of his ability to argue his theory of the case fully and to question one of the government's primary witnesses, Mr. Wolfe, who had significant credibility issues but was given a false aura of credibility by the fact that the court intervened, cut off questioning, and did not allow a full foundation to be established as to what false statements he'd said to Mr. Johnson. And certainly then the defense would have no ability to call Mr. Johnson to get in prior inconsistent statements when there's no foundation. There's no 613B foundation for that information. And for those reasons, we request that this court reverse and send this case back for a new trial to the district court. Thank you very much. Thank you very much, counsel. United States v. Scheherazade is submitted and will take up United States v. Joe Howe.
judges: Wardlaw, Berzon, Chen